## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CORDERO STUBBS,

        Plaintiff,

v.

CITY OF CHICAGO, *et al.*

        Defendants.

No. 21-cv-4715
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Cordero Stubbs (Stubbs) alleges that City of Chicago police officers, Ricardo Mendez (Mendez) and Regan Allen (Allen) (collectively, Officer Defendants), searched his person and car without probable cause, leading to his unlawful arrest, detention, and prosecution. The state eventually dismissed Stubbs' criminal case via a *nolle prosequi,* but not before Stubbs spent nine months in pretrial detention at the Cook County Jail. Stubbs has filed a First Amended Complaint (FAC) against Officer Defendants and the City of Chicago (collectively, Defendants) asserting claims under 42 U.S.C. § 1983. Stubbs also brings state law claims of intentional infliction of emotional distress and malicious prosecution against Officer Defendants. Finally, Stubbs asserts *respondeat superior* and indemnification claims against the City of Chicago (the City) based on Officer Defendants' conduct. R. 22, FAC.[1]

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Before the Court is Defendants' Joint Motion to Dismiss Stubbs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 27, Mot. Dismiss. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## Background[2]

On January 1, 2019, Officer Defendants received an anonymous tip that shots were fired in the vicinity of 6701 S. Chappel Avenue, in Chicago. FAC ¶¶ 10, 11. Stubbs was sitting in his parked car with Priscilla Smith, an acquaintance, at that approximate location, when Officer Defendants approached him. *Id.* ¶¶ 13, 16. As the Officer Defendants approached his car, Stubbs began to drive his vehicle, but the Officer Defendants curbed his vehicle and detained him. *Id.* ¶¶ 15–16. After placing Stubbs in handcuffs, Officer Defendants searched Stubbs and his car. *Id.* ¶¶ 17–18. The Officer Defendants recovered a firearm from his trunk *Id.* ¶¶ 20, 59.[3] At the time of the search, the Officer Defendants had not been provided a description of the suspected shooter. *Id.* ¶ 21.

Stubbs alleges that at the time of the search, Officer Defendants neither observed him in possession a firearm, nor could they have reasonably believed he had knowledge of all the items in his trunk to form the requisite intent to constructively possess its contents. FAC ¶¶ 23, 59. Nevertheless, Stubbs was arrested and charged

---

[2]The Court accepts as true all of the well-pleaded facts in the FAC and draws all reasonable inferences in favor of Stubbs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[3]While the FAC in one paragraph states that the Defendant Officers "alleged to have observed and recovered a firearm from the trunk," the FAC later refers to a "recovered firearm." FAC ¶ 59.

with the offense of armed habitual criminal. *Id.* ¶ 24.[4] Stubbs remained at the Cook County Jail in pretrial detention from the day of his arrest, January 1, 2019, until September 18, 2019. *Id.* ¶ 29.

In May 2021, the Circuit Court of Cook County granted a suppression motion relating to Stubbs' criminal case, finding that Officer Defendants did not have reasonable suspicion or probable cause to detain Stubbs from the inception of the police encounter. FAC ¶ 30. About one month later, the Cook County State Attorney's Office dismissed Stubbs' criminal charges. *Id.* ¶ 31.

On September 3, 2021, Stubbs filed suit against Defendants. R. 1. Stubbs amended his complaint on January 19, 2022. In the FAC, Stubbs asserts two Section 1983 claims against Defendants: Unlawful Detention (Count I), and Violation of Due Process (Count II). He also asserts the following state law claims against Officer Defendants: intentional infliction of emotional distress (Count III), and malicious prosecution (Count IV). As for the City, Stubbs alleges an indemnification claim (Count V) and a *respondeat superior* claim (Count VI).

---

[4]Defendants attach to their motion to dismiss court records from the Cook County Criminal Division relating to the charges brought against Stubbs. *See* R. 27-1, 27-2, 27-3. Generally, a court may not consider extrinsic evidence when reviewing a motion to dismiss without converting it to a motion for summary judgment. *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 894 (N.D. Ill. 2020) (citing *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018)). However, "[c]ourts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). *See also Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492–93, 494 (7th Cir. 2011). The Court accordingly takes judicial notice of these records.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Defendants move to dismiss the FAC in its entirety, arguing: (1) Stubbs has failed to state a viable Due Process claim; (2) Stubbs' Fourth Amendment unlawful detention and malicious prosecution claims are barred by probable cause; (3) Stubbs' state law claim for intentional infliction of emotional distress is barred by the statute of limitations; and (4) because Stubbs' underlying claims fail, so too must his supplemental claims of indemnification and *respondeat* superior. The Court addresses each argument in turn.

4

## I.      Due Process (Count II)

In Count II, Stubbs alleges that Officer Defendants deprived him of his constitutional right to be free of involuntary confinement. FAC ¶¶ 43–50.[5] Specifically, Stubbs pleads that his Due Process rights were violated when the Officer Defendants conducted a search and seizure of Stubbs without reasonable suspicion or probable cause, which led to his unlawful arrest and processing of criminal charges against him. *Id.* ¶ 45.

Section 1983 creates a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir.1995) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

Defendants' argument to dismiss Count II is twofold. First, Defendants contend that, to the extent Stubbs is attempting to bring an unlawful search or false arrest claim, such a claim is time-barred. Mot. Dismiss at 4–5. Next, Defendants maintain that Stubbs' Due Process claim must fail as a matter of law because his

---

[5]Count II does not enumerate a specific constitutional amendment. In their Motion to Dismiss, Defendants characterize Count II as pled under the Due Process Clause of the Fourteenth Amendment, and Stubbs does not dispute this characterization in his Response. Regardless of the amendment label given to Count II, Stubbs' due process claim cannot survive, for the reasons discussed herein. In any event, the Court still reaches Stubbs' pretrial detention claim under the Fourth Amendment in connection with Count I.

arrest did not lead to a conviction. *Id.* at 5–6. The Court begins with Defendants' time bar argument.

### A. Time Bar

Stubbs alleges that "the Defendant Police Officers conducted a search and seizure of Stubbs without reasonable suspicion or probable [cause], which led to his unlawful arrest and the processing of criminal charges against him." FAC ¶ 45. Defendants interpret this allegation as an attempt to bring claims for unlawful search and false arrest, and Stubbs does not dispute this characterization in his Response. *See* Mot. Dismiss at 4; Resp. at 4. As such, Defendants assert that, under *Wallace v. Kato*, 549 U.S. 384, 387 (2007) and *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010), Stubbs' apparent claims for unlawful search and false arrest accrued on January 1, 2019, the day that he was both searched and arraigned. Mot. Dismiss at 4–5. Because Stubbs did not file his complaint within two years of the accrual date, Defendants maintain these claims are time-barred. *Id.*

The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). And plaintiffs "need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Meyers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Dismissal under 12(b)(6) of the Federal Rules of Civil Procedure on statute of limitation grounds is "irregular because Rule 12(b)(6) tests the adequacy of the legal claim, not its timeliness." *Shuhaiber v. Dec.*, 2020 WL 6781798, *4 (N.D. Ill. Nov. 17, 2020) (internal quotation marks and citation omitted). However, dismissal is appropriate under Rule 12(b)(6) "if the complaint contains everything necessary to

establish that the claim is untimely." *Collins v. Village of Palantine*, 875 F.3d 839, 842 (7th Cir. 2017) (citation omitted).

It is undisputed that in Illinois, Section 1983 claims have a two-year statute of limitations. *See Lewis v. City of Chi.*, 914 F.3d 472, 478 (7th Cir. 2019) (citations omitted) ("A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years."). Although state law governs the length of the limitations period, federal law determines when the statute of limitations begins to run. *Id.*

As Defendants point out, under federal law, claims for unlawful search accrue immediately, while claims for false arrest accrue when a plaintiff is brought before a judge pursuant to legal process. *Wallace*, 549 U.S. at 397; *Evans*, 603 F.3d at 363; *see also Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) (holding that a false-arrest claim is an exception to the rule that a Section 1983 claim accrues when a plaintiff knows or has reason to know of the injury forming the basis of his action; rather, the statute of limitations begins to run when the arrestee is detained pursuant to legal process).

Applying those concepts here, the FAC "contains everything necessary to establish" that Stubbs' Count II unlawful search and false arrest claims are untimely. *Collins*, 875 F.3d at 842. That is, the FAC establishes that Stubbs was searched and arrested on January 1, 2019, and held in Cook County Jail beginning on January 1, 2019, meaning he was detained on that date pursuant to legal process. FAC ¶¶ 10, 15–20, 28, 29; *see also* Mot. Dismiss at 2. Accordingly, to be timely, Stubbs would have

had to file his Section 1983 claims for unlawful search and false arrest by January 1, 2021. Stubbs did not initiate this action until eight months later in September 2021. R. 1. Thus, it is evident from the FAC that Stubbs has pled himself out of court on those claims. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010).

Stubbs disagrees and characterizes the deprivation of his liberty as a continuing wrong that began at the search, and accrued, at the earliest, when his detention ended on September 18, 2019. R. 32, Resp. at 4–5. In support of this proposition, Stubbs relies on *Mitchell v. City of Elgin*, 912 F.3d 1012, 1015 (7th Cir. 2019). *Id.* at 5. But *Mitchell* did not address when a claim for false arrest or unlawful search accrues; nor did the case address the continuing wrong doctrine. Rather, in *Mitchell*, the Seventh Circuit held that the plaintiff's Fourth Amendment pretrial detention accrued when her detention ended. *Id.* Here, Defendants' statute of limitations argument pertains to any false arrest or unlawful search claim by Stubbs; Defendants apparently concede that Stubbs' unlawful detention claim is timely. *See* Mot. Dismiss at 5. As a result, Stubbs' reliance on *Mitchell* does not save his Count II claim, to the extent that Stubbs is alleging a false arrest or unlawful search. The Court agrees with Defendants that such a claim is time-barred.

## B. No Conviction

Defendants further argue that Stubbs' Due Process claim fails as a matter of law because he was never ultimately convicted. Mot. Dismiss at 5–6. According to Defendants, Stubbs' substantive due process claim is foreclosed by the fact that the

Cook County State's Attorney Office dismissed Stubbs' charges via *nolle prosequi*. *See* Mot. Dismiss at 6. Stubbs counters that he does not have to plead legal theories at this stage, and that all he had to do to plead a due process violation was "to raise a due process claim." Resp. at 4 (citing *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 553 (N.D. Ill. 2020)).

The Seventh Circuit has held that a due process claim cannot stand when the alleged violation did not lead to a conviction. For instance, in *Alexander v. McKinney*, 692 F.3d 553 (7th Cir. 2012), the plaintiff, who had been arrested, immediately released on bond, and found not guilty at trial, sued his prosecutor and the investigators on his case, alleging that they conspired "to manufacture false evidence and bring trumped-up charges" in violation of due process. 692. F.3d at 554. The Seventh Circuit held that the plaintiff's acquittal foreclosed any due-process claim, explaining, "[i]t would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to *effectuate* due process." *Id.* at 557 n.2 (emphasis in original). *See also Bianchi v. McQueen*, 818 F.3d 309, 319–20 (7th Cir. 2016). Courts have similarly found dismissal of due process claims proper when a plaintiff's charges were dismissed via *nolle prosequi. See, e.g.*, *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 971–72 (7th Cir. 1994) (finding criminal defendant's "right to due process of law was satisfied" where prosecutors decided to move for *nolle prosequi* pre-trial); *Lofton v. Eberle*, 2015 WL 507472, at *4 (N.D. Ill. Feb. 5, 2015) (dismissing due process claim where charges

dropped via *nolle prosequi*); *Barrow v. City of Chicago*, 2014 WL 1612712, at \*4 (N.D. Ill. Apr. 21, 2014) (same).

That is not to say, however, that there can be *no constitutional violation* without a subsequent conviction.[6] There is certainly a constitutional right to not be held in custody without probable cause, even if an individual is later acquitted or has her charges dropped via *nolle prosequi*. However, as the Supreme Court and Seventh Circuit have made clear, that constitutional right is housed in the Fourth Amendment, not the Due Process Clause. As the Seventh Circuit succinctly put it, "the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention." *Lewis*, 914 F.3d at 475. In *Lewis*, the Seventh Circuit affirmed the dismissal of the plaintiff's due process claim based on the Supreme Court's decisions in *Manuel v. City of Joliet* (*Manuel I*), --- U.S. ----, 137 S. Ct. 911 (2017) and *Manuel v. City of Joliet* (*Manuel II*), 903 F.3d 667 (7th Cir. 2018), which, taken together, dispel any previous suggestion that unlawful pretrial detention could be a deprivation of liberty cognizable under the Due Process Clause. As the Seventh Circuit stated in *Lewis*, the *Manuel* cases make it "clear that a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment." *Id.* at 478 (emphasis in original). As a result, Stubbs' due process claim that he suffered a deprivation of liberty due to the Defendant Officers conducting a search without reasonable suspicion or probable cause, which led to his unlawful arrest and the

---

[6]Defendants appear to concede as much. *See* Mot. Dismiss at 6.

processing of criminal charges against him, *see* FAC ¶ 45, is a pretrial detention claim that cannot survive as a due process claim.

Stubbs fails to acknowledge *Lewis* or any of the precedent cited by Defendants, and instead relies solely on *Baker v. City of Chicago*, 483 F. Supp. 3d 543 (N.D. Ill. Aug. 31, 2020) to assert that all that is required to sufficiently plead a due process violation is to raise a due process claim. Resp. at 4. Stubbs' reliance on *Baker* is ultimately unavailing, however, as *Baker* involved plaintiffs who successfully pled a due process claim for evidence fabrication by pleading that the defendant officers planted drugs on the plaintiffs' property, falsified reports, and presented such fabricated evidence at trial to the plaintiffs' convictions. 483 F. Supp. at 553. The *Baker* court addressed the question of whether courts in the Seventh Circuit recognize a standalone federal due process claim for evidence fabrication that is separate and apart from a malicious prosecution claim. *Id.* So, *Baker* addressed a different question and is inapposite because Stubbs was not convicted. Thus, Stubbs' reliance on *Baker* does not save his due process claim.

Although raised by neither party, one more issue surrounding Stubbs' due process claim warrants discussion, albeit brief. In *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019), the Supreme Court assumed, without deciding, that a pretrial detention could constitute a deprivation of liberty under the Due Process Clause. Following *McDonough*, however, the Seventh Circuit has affirmed *Lewis*'s reading of the *Manuel* cases without requiring analysis of *McDonough*. *See Cusick v. Gualandri*, 2021 WL 5447041 at *4 (N.D. Ill. Nov. 22, 2021) (collecting cases).

In light of this friction, some courts in this district have "declined to dismiss on the pleadings a Fourteenth Amendment unlawful detention claim brought in conjunction with a Fourth Amendment claim." *Winn v. City of Chicago*, 2022 WL 80272 (N.D. Ill. Jan. 1, 2022) (internal citation omitted). The Court need not choose sides in this debate here, however, because Stubbs does not solely rely on his due process claim. As noted above, in Count I, he pleads a claim for unlawful detention under the Fourth Amendment. Accordingly, heeding the clear holding in *Lewis* and its continued affirmation after *McDonough*, the Court dismisses Count II with prejudice.

## II. Unlawful Detention and Malicious Prosecution (Counts I and IV)

In Count I, Stubbs alleges that Officer Defendants violated his Fourth Amendment constitutional rights by detaining him for nine months without probable cause (Count I). FAC ¶¶ 35–42. In Count IV, Stubbs claims that the Defendant Officers knowingly sought and did in fact maliciously prosecute Stubbs on charges for which they knew there was no probable cause, from January 1, 2019 to June 10, 2021. *Id.* ¶¶ 56–62. Defendants move to dismiss both counts, arguing that probable cause existed for Stubbs' charges and detention. Mot. Dismiss at 6–10.

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. "The Fourth Amendment protects two types of expectations, one involving searches and the other seizures."

*Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992) (internal quotation marks and citations omitted).

With respect to Stubbs' state law malicious prosecution claim, Illinois requires a malicious prosecution plaintiff to allege that: "(1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceedings were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 921–22 (N.D. Ill. 2014) (citations omitted).

Because Fourth Amendment seizures are reasonable if they are based on probable cause, *see Lewis*, 914 F.3d at 476 (citation omitted), it follows that the existence of probable cause makes a Fourth Amendment seizure reasonable and therefore lawful. As such, probable cause defeats an individual's Fourth Amendment unlawful detention claim. *See Lusa v. Indiana Dep't of Child Servs,* 2021 WL 5154098, at *2 (7th Cir. Nov. 5, 2021) (citing *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018)). Probable cause likewise provides a complete defense to an Illinois malicious prosecution claim. *See Turner v. Chicago*, 91 Ill. App. 3d 931, 934, 415 N.E.2d 481 (1st Dist. 1980); *McWilliams v. City of Chicago*, 451 F. Supp. 3d 867, 879 (N.D. Ill. 2020), *aff'd*, No. 20-1770, 2022 WL 135428 (7th Cir. Jan. 14, 2022) (citation omitted).

Officer Defendants contend that Stubbs has pled himself out of court on unlawful detention and malicious prosecution counts because his complaint establishes probable cause. Mot. Dismiss at 6–10. Stubbs, unsurprisingly, disagrees

and argues that the issue of probable cause was already decided by the state court at his suppression hearing. Resp. at 5. Stubbs therefore argues that the issue of probable cause is barred from re-litigation due to issue preclusion. *Id.*

Under Illinois law, issue preclusion only applies if "the issue decided in the prior adjudication is *identical* with the one presented in the suit in question." *Dunlap v. Nestle USA, Inc.*, 431 F.3d 1015, 1018 (7th Cir. 2005) (emphasis added) (citing *Herzog v. Lexington Township*, 657 N.E.2d 926, 929-30 (Ill. 1995)). As the Officer Defendants point out, in a Section 1983 case, the issue of whether probable cause existed to initially stop and search is distinct from the issue of whether probable cause existed to detain *after* a firearm was recovered from Stubbs' trunk. *See* Reply at 3–4. Those issues are distinct in a Section 1983 action, as "the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'" *Martin v. City of Chicago*, 2017 WL 56633 * 4 (N.D. Ill., Jan. 5, 2017) (citation omitted). So, while the state court was faced with deciding whether to suppress evidence found after an illegal stop, which implicates the fruit of the poisonous tree doctrine, this federal Section 1983 case is concerned with whether the officers had probable cause to detain and prosecute Stubbs once they had stopped him, irrespective of whether the initial stop was lawful. Because those two issues are not identical, Stubbs' issue preclusion argument falls flat.

Issue preclusion aside, the question remains whether Stubbs has pled himself out of Court by including allegations sufficient to show that Defendant Officers had probable cause to detain him and charge him. Because the Court agrees with

Defendants that the exclusionary rule is not available in Section 1983 suits against police officers, the question is whether the Defendant Officers had probable cause to detain and charge Stubbs once they stopped him, regardless of whether the initial stop was lawful.

Defendants argue that the officers in this case "clearly had probable cause based on the facts alleged in plaintiff's operative complaint to arrest and prosecute plaintiff for unlawful use of a weapon by a felon." Mot. Dismiss at 9.

Before the Court dives into Defendants' probable cause argument, a brief aside is needed with respect to Stubbs' criminal charges. As Defendants acknowledge, the FAC actually alleges that Stubbs was charged with Armed Habitual Criminal, *see* FAC ¶ 24, whereas Defendants assert that that charge was brought by the Cook County State's Attorney by way of indictment. Mot. Dismiss at 2 n.2. Defendants insist that Defendant Officers only charged Stubbs with unlawful use of a weapon-felon under 720 ILCS 5/24-1.1(a) and possession of a firearm with a defaced serial number under 720 ILCS 5/24-5(b). *Id.* at 7. Because the Court is constrained by the four corners of the FAC and the documents it has taken judicial notice of, the Court focuses its analysis on the Armed Habitual Criminal charge. In any event, it does not matter which gun charge the Court assesses, as both the Armed Habitual Criminal charge and the unlawful use of a weapon-felon charge require Stubbs to have a criminal history at the time of his detention. As discussed below, the FAC does not plead facts showing that the Defendant Officers had access to information about Stubbs' criminal history when they detained him.

15

Returning to the substance of Defendants' probable cause argument, Defendants highlight that Stubbs did not plead that he *had not been convicted* of one or more predicate felonies at the time of his arrest. Mot. Dismiss at 9. As such, Defendants argue that Stubbs essentially conceded that piece of the habitual criminal charge, and that the only question that remains is "whether the officers had probable cause to believe plaintiff possessed a firearm." *Id.* (citing *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021)). To that end, Defendants spill much ink arguing that Stubbs had constructive possession of the firearm in his trunk. Defendants' contention misses the mark.

As an initial matter, the *Young* case does not advance Defendants' argument that the only question is whether the officers had probable cause to believe Stubbs possessed a firearm. In *Young*, the plaintiff sued Chicago and several of its police officers under Section 1983 for, among other things, unlawful detention and malicious prosecution. 987 F.3d at 643. Defendants sought summary judgment on all counts, arguing that the officers had probable cause to detain the plaintiff. *Id.* The record at summary judgment included the following facts surrounding the plaintiff's arrest: (1) the police officers had received an anonymous tip that the plaintiff and his companion were driving around with a gun in their car; (2) the officers pulled over the plaintiff's vehicle when they saw that the plaintiff's companion was not wearing a seatbelt; (3) the plaintiff and his companion argued loudly about the gun and the plaintiff's companion placed a gun on the center console; and (4) the officers saw this commotion take place inside the car and saw the gun on the console. *Id.* The district court agreed

16

that the record demonstrated probable cause for the detention and charges and granted summary judgment in favor of defendants. *Id.* On appeal, Young maintained that the officers did not have probable cause to detain him for being an armed habitual criminal. *Id.* at 644. The Seventh Circuit found that because the parties agreed that the plaintiff had been convicted of two or more predicate felonies at the time of his arrest, and because Young did not argue that the officers lacked the knowledge of this fact necessary to detain him, "[t]he only question" was "whether the officers had probable cause to believe that [the plaintiff] possessed a firearm." *Id.*

While at first glance, the *Young* case may appear to be on all fours with this one, the procedural posture of *Young* is distinct. In particular, the district court in *Young*, and then the Seventh Circuit, were deciding probable cause based on an evidentiary record after discovery. Here, the Court is limited to the well-pled allegations in the FAC, and the Court must construe them in the light most favorable to Plaintiff. Those allegations include that "[a]t the time of the stop and search, Defendant Police Officers were not equipped with a description of the suspected shooter"; "[a]t the time of the stop and search, Stubbs had committed no traffic violation, and he did not give Defendant Police Officers reason to believe that he had committed a crime"; "[a]t no point during the encounter with Stubbs did any of the Defendant Police Officers observe Stubbs to possess a firearm"; and "the Defendant Police Officers detained Stubbs without a reasonable belief that Stubbs posed a threat to them, or that he had committed, was committing, or was about to commit a crime." FAC ¶¶ 21, 22, 23, 27. In addition, once the defendants in *Young* met their initial

summary judgment showing, the plaintiff, as the nonmoving party, bore the burden of coming forward with specific facts showing there was a genuine dispute of fact with respect to probable cause. *See Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022); *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, ---F. Supp. 3d ----, 2022 WL 954603, at *2 (N.D. Ill. Mar. 30, 2022). As such, it was proper for the Seventh Circuit, ruling in a summary judgment context, to hold the *Young* plaintiff's failure to argue the defendant officers' lack of knowledge about his criminal record against him, whereas that would be inappropriate in a Rule 12(b)(6) posture. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (district court errs when it grants Rule 12(b)(6) motion in light of plaintiff's failure to oppose it). *See also Henderson v. Rangel*, 2020 WL 5642943, *4 (N.D. Ill. Sept. 21, 2020) (citation omitted) ("At this stage in the proceedings, the Court will not make a determination regarding probable cause because doing so inherently involves findings of fact not permitted on a motion to dismiss.").

In short, *Young* had a distinct procedural posture which makes the case unhelpful in advancing Defendant's position that the only issue here is whether the officers had probable cause to suspect that Stubbs possessed a firearm. The Court therefore assesses probable cause more generally and does not limit its analysis to whether Stubbs possessed a firearm.

Probable cause to detain "exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred."

*Young*, 987 F.3d at 644 (internal quotation marks and citation omitted).[7]  Probable cause is "assessed objectively," based on "the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Id.* (internal quotation marks and citations omitted). With respect to malicious prosecution, probable cause is defined as a statement of facts that would lead a prosecutor of ordinary caution and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. *See Turner*, 415 N.E.2d at 481. A person commits the offense of armed habitual criminal in Illinois when, he or she possesses or transfers any firearm "after having been convicted a total of 2 or more times of any combination of the following offenses: (1) a forcible felony as defined in Section 2-8 of this Code . . ." 720 ILCS 5/24-1.7(a). Forcible felonies include robbery. 720 ILCS 5/2-8.

Here, the FAC alleges that on or around January 1, 2019, the Defendant Officers "received an anonymous call that shots were fired . . . at approximately 2:30 a.m." in the area at or about 6701 South Chappel Avenue in Chicago. FAC ¶¶ 10–11. The FAC further states that the Defendant Police Officers "responded to the area of the shots fired call and observed Stubbs sitting in a parked vehicle at the rear of an apartment building." *Id.* ¶ 13. The FAC goes on to allege that "Police officers approached Stubbs, and Stubbs then began to drive his vehicle." *Id.* ¶ 14. Shortly thereafter, according to the FAC, Defendant Police Officers curbed the vehicle driven

---

[7]While *Young* does not advance Defendants' position with respect to the proposition that the only question before the Court is whether there was probable cause for the Defendant Officers to believe that Stubbs had a gun, *Young* nevertheless is binding authority on how probable cause should be assessed with respect to an unlawful detention claim.

by Stubbs, detained Stubbs and his front seat passenger, placed Stubbs in handcuffs, and conducted a search of his person. *Id.* ¶¶ 15–16. Next, Stubbs pleads that Defendant Police Officers searched the interior of Stubbs' vehicle, as well as the trunk; "[d]uring the Defendant Police Officers' search of the vehicle's trunk, they observed a trunk filled with miscellaneous items, including laundry detergent, an alcohol bottle, gym shoes, cleaning supplies, paper, a book, a car mat, a small vacuum, a garbage bag, a book bag, a spare tire, and a book." *Id.* ¶ 19. Stubbs alleges that "[a]s Defendant Police Officers conducted their warrantless search of the vehicle's trunk, in addition to observing the miscellaneous items, they also alleged to have observed and recovered a firearm from the trunk." *Id.* ¶ 20. Stubbs later refers to a "recovered firearm" in the FAC. *Id.* ¶ 59.

When the Court accepts the foregoing allegations as true and draws all reasonable inferences in favor of Stubbs, as it must, *See Platt*, 872 F.3d at 851, the Court cannot say that Stubbs has pled himself out of court on Counts I and IV by alleging probable cause. In particular, there is nothing within the four corners of the FAC indicating that the Defendant Officers had Stubbs' criminal history information available to them at the time of detaining him. Without that information, the facts spelled out in the FAC do not establish probable cause; finding someone parked in an area for which there was an anonymous tip of gunshots, on a night "shots were being fired all across the city of Chicago - a common occurrence after the stroke of midnight going into the new year," FAC ¶ 12, does not add up to probable cause, even if a gun is recovered from the trunk of an individual's vehicle, as having a gun in one's trunk,

on its own, is not illegal.[8] *See United States v. Watson*, 900 F.3d 892, 896 (7th Cir. 2018) (explaining that, when a 911 caller reported "boys . . . playing with guns" in a parking lot, no probable cause existed in part because gun possession by itself was not inherently unlawful); *United States v. Williams*, 2021 WL 25550, at *8 (N.D. Ill. 2021) (citations omitted) ("It is true that neither Illinois nor Chicago criminalizes all gun possession in public. Not surprisingly, mere gun possession standing alone cannot establish probable cause (setting aside gun possession that is illegal in certain areas, such as in a liquor store, 720 ILCS 5/24-1(a)(8))."). *See also U.S. ex rel. Noel v. Clark*, 121 F. Supp. 2d 1172, 1176 (N.D. Ill. 2000) (citation omitted) ("Anonymous tips do not alone form a sufficient foundation for probable cause and a lawful arrest."); *Huff v. Reichert*, 744 F.3d 999, 1007–08 (7th Cir. 2014) ("[P]robable cause cannot stem only from a suspect's presence in a high-crime area[.]").

Because Defendants have failed to persuade the Court that Stubbs has pled himself out of court with respect to probable cause, Counts I and IV survive Defendants' motion to dismiss.[9]

---

[8] The Court has also considered Stubbs' allegation that he "began to drive his vehicle" when the Defendant Officers approached Stubbs. *See* FAC ¶ 14. But, there is a reasonable inference that Stubbs began to move his vehicle out of nervousness, fear, or some other reason that had nothing to do with the Defendant Officers' approach. The Court therefore draws that reasonable inference in favor of Stubbs instead of drawing the competing inference, also reasonable, that Stubbs was attempting to flee, or that his driving somehow indicated he was evading detection for some criminal activity.

[9] For the first time, on reply, Defendants raise the case of *Vaughn v. Chapman*, 662 Fed. App'x. 464 (7th Cir. 2016). *See* Reply at 3. While the Court need not address authority raised for the first time on reply, *see Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013), the case is nonetheless distinguishable because the complaint in *Vaughn* revealed that the officers who had discovered a firearm in the plaintiff's trunk had learned from a records search that the plaintiff was a felon. 662 Fed. App'x at 467. The officers

### III.    Intentional Infliction of Emotional Distress (Count III)

In Count III, Stubbs alleges that Officer Defendants' acts and conduct proximately caused him severe emotional distress, therefore rendering them liable for intentional infliction of emotional distress (IIED). FAC ¶¶ 51–55.

Officer Defendants correctly point out that in Illinois, an IIED claim carries a one-year statute of limitations. Mot. Dismiss at 10. Because Stubbs' IIED claims accrued on the date of his arrest on January 1, 2019, they argue that his claim is time-barred because he did not file his initial complaint until September 3, 2021. *Id.* at 10 (citing *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013)).

Stubbs concedes that a one-year period applies to IIED claims, but argues that his is not time-barred because the tort involved a continuing or repeated injury. Resp. at 6–7. As such, reasons Stubbs, his IIED claim is timely because it did not accrue until the tortious acts stopped on June 10, 2021, the day his criminal charges were dropped. *Id.*

The Court agrees with Defendants that the Seventh Circuit's holding in *Bridewell* controls, and that Stubbs' IIED claim is time-barred. *Bridewell* clearly dictates that a "a claim of intentional infliction of emotional distress in the course of an arrest and prosecution accrues *on the date of the arrest*." 730 F.3d at 678 (emphasis added). To be sure, *Bridewell* left "open the possibility that a new IIED claim could arise based on events after an initial injury where there is an allegation that the defendants acted with a 'freshly formed intention to cause emotional distress.'" *Hill*

---

had also learned from authorities in Arizona that the plaintiff was a suspect in an aggravated assault and armed robbery involving a weapon of the same caliber.

*v. City of Chi.*, 2014 WL 1978407, at *3 (N.D. Ill. May 14, 2014) (citation omitted). As Defendants point out, however, *Bridewell* explicitly stated that "the idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either." *Bridewell*, 730 F.3d at 678 (citations omitted).

Here, Stubbs does not allege that Officer Defendants acted with "freshly formed intent" at any point during his detention and prosecution. *Id.* Rather, he appears to claim that the allegedly bad intent that led to his arrest continued until his criminal case was dismissed. Resp. at 6–7; *see also* FAC ¶¶ 53–55. These allegations accordingly contravene *Bridewell.* 730 F.3d at 679 ("[I]f the initial intent carries forward, so does the initial date of the claim's accrual."). Further, because the authority on which Stubbs relies to distinguish his case is non-binding precedent predating *Bridewell*, it is ultimately uninstructive. Resp. at 6–7.

Stubbs' argument that his IIED claim is timely because it is "inextricably intertwined" with his malicious prosecution claim is similarly foreclosed by *Bridewell*. Resp. at 7. Indeed, "Courts in this district have consistently applied *Bridewell* broadly, holding that IIED claims of this sort accrue on the day of arrest, even where the distress alleged is 'intertwined' with a claim for malicious prosecution." *Friends-Smiley v. City of Chi.*, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016) (collecting cases).

In accordance with *Bridewell,* Stubbs' IIED claim is obviously time-barred. *See Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 F. Appx. 523, 524–25 (7th Cir.

2005) (cleaned up) (holding that "dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the plaintiff pleads himself out of court by admitting all the ingredients of an impenetrable defense.") Accordingly, Defendants' Motion to Dismiss is granted as to Count III.

## IV. Indemnification and *Respondeat Superior* (Counts V and VI)

Finally, Stubbs asserts two claims against the City. In Count V, Stubbs seeks to hold the City liable for indemnification for any damages awarded against Officer Defendants based on their alleged acts. FAC ¶¶ 63–67. In Count VI, Stubbs alleges that because Officer Defendants were members and agents of the Chicago Police Department and acting at all relevant times within the scope of their employment and under the color of law, the City is liable under a theory of *respondeat superior* liability as their principal. *Id.* ¶¶ 68–71.

Defendants argue that because Stubbs' unlawful detention, due process, IIED and malicious prosecution claims fail, the City cannot be held liable to Stubbs. Mot. Dismiss at 11. This argument is unavailing because it rests on the assumption that Defendants' Motion to Dismiss would be granted in full. Because the Court has denied Defendants' Motion to Dismiss with respect to Counts I and IV, Defendants' Motion to Dismiss Counts V and VI is denied.[10]

---

[10]In their Reply, Defendants express concern that Stubbs' Response improperly attempts to raise a conspiracy claim for the first time. Reply at 8. Citing Stubbs' assertion that "[he] has made a plausible allegation that police officers conspired to – and did – unlawfully deprive Plaintiff of his constitutional right to be free from involuntary confinement," Defendants argue that this attempt must fail. *Id.* The Court agrees that any such attempt by Stubbs to amend the FAC, which does not contain a conspiracy count, must fail. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (citation omitted).

**Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [27] is granted in part and denied in part. Defendants' Motion to Dismiss Counts I, IV, V, and VI is denied. Defendants' Motion to Dismiss Counts II and III is granted, and Counts II and III are dismissed with prejudice because amendment to those counts would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (citations omitted). The stay on discovery is lifted. Defendants shall answer the FAC by August 15, 2022.

Dated: July 25, 2022

_____
United States District Judge
Franklin U. Valderrama