UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Cordero Stubbs,

    *Plaintiff,*

v.

City of Chicago, *et al.*,

    *Defendants.*

No. 21 CV 4715

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Between New Year's parties on January 1, 2019, Cordero Stubbs was sitting in his car. Police pulled up, detained him, searched his car, and found a firearm with a defaced serial number. Prosecutors charged Stubbs with several offenses, but they dropped the charges after a judge ruled that the search was illegal and suppressed the gun. Stubbs sued the City of Chicago and Officers Regan Allen and Ricardo Mendez, who move for summary judgment [Dkt. 97.] For the reasons stated below, Defendants' motion is granted.

## I.    Background

Ordinarily, at summary judgment, the Court looks to the parties' Local Rule 56.1 statements to learn which facts are in dispute and views the record in favor of the nonmovant. Here, however, Stubbs responded "Admitted" to each of Defendants' statements of fact [Dkt. 102], so the Court relies on their version of events [Dkt. 97] and supplements it with Stubbs's statement of additional facts. [Dkt. 104.]

On December 31, 2018, Stubbs and his friend Priscilla Smith drove to a party in Stubbs's 1997 Jeep Grand Cherokee. [Dkt. 97 ¶¶ 6–8.] After midnight, they left to

pick up Stubbs's younger brother Tevin; Tevin had a .38-caliber handgun on him. [*Id.* ¶¶ 6–7, 10.] Stubbs drove to a different party but was unable to find parking, so he circled the block before parking in the alley behind the location of the party. [*Id.* ¶¶ 11–12.] While the three sat in the car, Stubbs spoke to several nearby friends, and Smith and Tevin smoked marijuana. [*Id.* ¶¶ 13–14.][1] During this time, Tevin placed the gun in the rear cargo area of the car; Stubbs did not know about and never actually possessed the gun. [*Id.* ¶ 13; Dkt. 104 ¶¶ 1–2.] Cam Branch, a friend of Stubbs's, then joined Tevin in the backseat. [Dkt. 97 ¶¶ 15–16.]

Police were in the area responding to calls of gunshots, which Stubbs later testified was ordinary on New Year's in Chicago. [*Id.* ¶¶ 27–28; Dkt. 104 ¶ 3.] The call did not identify or describe Stubbs or his car as involved in the shooting. [*Cf.* Dkt. 104 ¶¶ 5–6.] An unmarked police car pulled up behind Stubbs's car; the record does not disclose why the police approached Stubbs's vehicle other than its vicinity to the reported gunshots. [Dkt. 97 ¶ 17; *cf. id.* ¶¶ 17–28.][2] Tevin and Branch then exited the car and fled the scene. [*Id.* ¶¶ 18, 20, 22; Dkt. 104 ¶ 4.] Stubbs saw uniformed officers and realized the car was a police car, but he attempted to drive away to avoid a tow or a ticket. [Dkt. 97 ¶¶ 19–21, 23; Dkt. 104 ¶ 4.] Stubbs's attempt to exit the alley quickly failed when several police cars blocked his exit route. [Dkt. 97 ¶¶ 25–26, 29.]

---

[1]    Stubbs denies smoking marijuana, but Tevin said Stubbs smoked a blunt "a couple of times." [Dkt. 97 ¶ 13.] This issue is immaterial.

[2]    Stubbs asserts that the officers lacked information about the alleged shooter, had no information linking him or his car to any shooting, and did not know why his car was being stopped. [Dkt. 104 ¶¶ 5–7.] These issues are immaterial.

Officers approached Stubbs's vehicle and ordered him multiple times to turn off and exit the car. [*Id.* ¶¶ 30–32.] He did not immediately comply, and police tried to open the door, after which Stubbs exited the vehicle. [*Id.* ¶¶ 33–35.][3] The officers handcuffed Stubbs and Smith, and they told Stubbs that his plates were expired and that one of his friends had been seen with a bottle of liquor. [*Id.* ¶¶ 36–38.] Stubbs made no furtive movements, the police did not see Stubbs with a firearm, and they did not issue Stubbs a traffic citation. [Dkt. 104 ¶¶ 9, 11.] For unexplained reasons, Mendez searched Stubbs's vehicle without his consent and found a gun in the rear cargo area beside an open liquor bottle. [Dkt. 97 ¶¶ 39–40; Dkt. 104 ¶ 10.][4] The gun was loaded and had a defaced serial number. [Dkt. 97 ¶¶ 41–42.]

Stubbs was arrested and taken into custody. [*Id.* ¶ 44.] Prosecutors initially charged him with gun-related offenses, and a judge found probable cause to detain him. [*Id.* ¶¶ 51–53.] An indictment for different offenses followed. [*Id.* ¶ 54.] Stubbs posted bond in September 2019 and was released from custody. [*Id.* ¶ 55.] In May 2021, a judge held a hearing on Stubbs's motion to suppress evidence, at which Allen and Mendez testified. [*Id.* ¶ 56; Dkt. 104 ¶ 14.] The judge granted the motion to suppress, and the charges were dropped. [Dkt. 97 ¶¶ 56–57.]

---

[3]   Stubbs asserts that he did not hear the police try to stop him, that no one approached him, and that no one said anything to him. [Dkt. 104 ¶ 8.] These points are also immaterial.

[4]   Stubbs states that Mendez did not see the firearm in "plain view." [Dkt. 104 ¶ 7.] Defendants characterize this as a legal argument. [Dkt. 107 ¶ 7.] The Court takes no position on this issue because these are two ways to describe the fact that a search occurred. If the gun was in plain view, then there would have been no "search." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987) ("[M]erely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes."). Here, Defendants assert that there *was* a search, which is consistent with Stubbs's position that the gun was not in plain view.

In September 2021, Stubbs filed this lawsuit. [Dkt. 1.] His operative Amended Complaint stated four claims—two under federal law, two under Illinois law—against Allen and Mendez and derivative indemnification and *respondeat superior* claims against the City. [Dkt. 22.] Defendants moved to dismiss. [Dkt. 27.] The Court dismissed Stubbs's due process and intentional infliction of emotional distress claims as untimely, but allowed the wrongful detention and malicious prosecution claims to proceed. *Stubbs v. City of Chicago*, 616 F. Supp. 3d 793 (N.D. Ill. 2022). Defendants now move for summary judgment on Stubbs's remaining claims. [Dkt. 97.]

## II.  Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted).

## III.  Analysis

Stubbs's surviving substantive claims against Allen and Mendez are Count I, wrongful detention under 42 U.S.C. § 1983, and Count IV, malicious prosecution under Illinois law. The claims against the City rise and fall with the substantive claims, *see Moran v. Calumet City*, 54 F.4th 483, 500 (7th Cir. 2022), so the Court

focuses on the claims against the individual Defendants. Wrongful detention and malicious prosecution claims require a plaintiff to prove that there was no probable cause to prosecute him. *See Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024); *Moran*, 54 F.4th at 499–500. Defendants argue that they are entitled to summary judgment because Mendez's finding the gun in Stubbs's car established probable cause to prosecute him. [Dkt. 98 at 8–12.] The Court agrees.[5]

"Probable cause exists when a reasonable officer with all the knowledge of the on-scene officers would have believed that the suspect committed an offense defined by state law." *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1043 (7th Cir. 2023) (cleaned up). The "inquiry is purely objective, and the officer's subjective state of mind and beliefs are irrelevant." *Id.* (cleaned up). Probable cause is present "where a probability or a substantial chance of criminal activity exists"; it "does not require a certainty that a crime was committed." *Moorer*, 92 F.4th at 720 (cleaned up). Indeed, probable cause does not even require a preponderance of the evidence. *See United States v. Miles*, 86 F.4th 734, 742 (7th Cir. 2023).

It is undisputed that Mendez searched Stubbs's vehicle and found a loaded handgun with a defaced serial number. [Dkt. 97 ¶¶ 39–42.] Those facts establish that Defendants had probable cause because a reasonable officer in their shoes would have believed that Stubbs possessed the firearm that was in his car. *See Pierner-Lytge*, 60 F.4th at 1043; *see also, e.g.*, *Young v. City of Chicago*, 987 F.3d 641, 642 (7th Cir. 2021) ("Chicago police officers lawfully stopped Young while he was driving. A gun

---

[5]    Because the Court rules in Defendants' favor on the merits, it does not consider their alternative argument that they are entitled to qualified immunity. [Dkt. 98 at 12–13.]

was found next to Young in the car. And Young is a convicted felon. That's textbook probable cause."); *United States v. Williams*, 495 F.3d 810, 815 (7th Cir. 2007) ("The discovery of a stolen handgun inside the car that Williams owns and was seen driving forty-five minutes earlier … established probable cause to arrest him." (citation omitted)); *Martin v. City of Chicago*, 2017 WL 56633, at *3 (N.D. Ill, Jan. 5, 2017) (finding that probable cause existed for several reasons, including that "officers recovered on scene a handgun with a defaced serial number" (citations omitted)), *aff'd sub nom. Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019). Stubbs's unlawful detention and malicious prosecution claims therefore fail as a matter of law. *See Moorer*, 92 F.4th at 720; *Moran*, 54 F.4th at 499–500.[6]

Stubbs's counterarguments do not change the outcome. He first invokes the general principle that a jury must resolve factual disputes underlying a probable cause determination. [Dkt. 105 at 5.] But even the case he cites in support of that proposition, *Sornberger v. City of Knoxville*, explains that probable cause is a jury question "if there is room for a difference of opinion concerning the facts or reasonable inferences to be drawn from them." 434 F.3d 1006, 1013–14 (7th Cir. 2006) (citation omitted). Here, the relevant facts are undisputed, and they leave no room for a difference of opinion as to whether there was probable cause.

While there are disputes as to whether Stubbs had constructive possession of the gun or even knew it was in his car [Dkt. 105 at 5–6], these disputes do not affect

---

[6] Moreover, Stubbs was held pursuant to a judicial determination of probable cause which "is normally entitled to a presumption of validity." *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) (citation omitted). The Court need not delve into the issue of the judicial finding of probable cause because even without it, Defendants would prevail.

the question of probable cause. Seventh Circuit precedent is clear that finding an illegal gun in a car that a suspect owns and has been driving suffices for probable cause. *See Williams*, 495 F.3d at 815; *cf. Young*, 987 F.3d at 642 (7th Cir. 2021) ("It does not matter that Young said the gun wasn't his—protesting innocence is not a get-out-of-pretrial-detention-free card."). Determining whether a suspect actually committed the crime he was arrested for and whether the prosecution can meet its burden of proof are questions for a criminal trial; they do not bear on the propriety of bringing the prosecution. *See Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) ("Where a reasonable person would have a sound reason to believe the suspect committed a crime, the police may arrest and allow the criminal justice system to determine guilt or innocence." (citation omitted)).

Stubbs next attacks the subjective knowledge and intent of Allen and Mendez [Dkt. 105 at 6], but an "officer's subjective state of mind and beliefs are irrelevant" to probable cause. *Pierner-Lytge*, 60 F.4th at 1043 (quotation omitted). Nor do the flaws in the stop and search that Stubbs identifies [Dkt. 105 at 6–7] (and that led the state court judge to suppress the gun) undermine probable cause. "[T]he exclusionary rule does not apply in a civil suit under § 1983 against police officers," so a search that violates the Fourth Amendment does not negate probable cause. *Martin*, 934 F.3d at 599 (citations omitted); *see Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) (per curiam) ("Although Vaughn alleges that this evidence was the fruit of an illegal search of the car, this would not undermine its relevance to the question of probable cause."). A plaintiff may challenge the constitutionality of a search in a § 1983 suit,

*see, e.g.*, *Wade v. Ramos*, 26 F.4th 440, 446–49 (7th Cir. 2022), but Stubbs's claim is time barred, *Stubbs*, 616 F. Supp. 3d at 799–800, and he cannot resurrect it by framing it as a claim for unlawful detention stemming from an illegal search.

During Mendez's search of Stubbs's car—the constitutionality of which Stubbs missed the deadline to challenge—he found an illegal firearm with a defaced serial number. "That's textbook probable cause," *Young*, 987 F.3d at 642, and it defeats Stubbs's claims for wrongful detention and malicious prosecution. *See Moorer*, 92 F.4th at 720; *Moran*, 54 F.4th at 499–500. Stubbs's derivative liability claims against the City meet with the same fate because they "depend on [Stubbs] prevailing against at least one of the individual defendants." *Moran*, 54 F.4th at 500 (citation omitted). Defendants are therefore entitled to summary judgment on all of Stubbs's claims.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [Dkt. 97] is granted. Judgment shall enter in favor of Defendants and against Plaintiff. Civil case terminated.

Enter: 21-cv-4715
Date: April 2, 2024

_____
Lindsay C. Jenkins
United States District Judge